UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              )
IN RE:                                        )    CASE NO.    10-33102
                                              )
BRIDGEPORT REDEVELOPMENT, INC.,               )    CHAPTER    11
                                              )
         DEBTOR.                              )    ECF NO.    664
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

| | |
|---|---|
| Ira B. Charmoy, Esq. | Counsel for the Debtor and Debtor-in- |
| Michael A. Carbone, Esq. | Possession |
| Zeldes, Needle & Cooper, P.C. | |
| 1000 Lafayette Boulevard | |
| P. O. Box 1740 | |
| Bridgeport, CT 06601-1740 | |
| | |
| Charles J. Filardi, Jr., Esq. | Counsel for Manuel Moutinho, Mark IV |
| Filardi Law Offices LLC | Construction Company, Inc. and Manuel |
| 65 Trumbull Street, Second Floor | Moutinho, Trustee for the Mark IV |
| New Haven, CT 06510 | Construction Company 401(k) Savings Plan |

**BRIEF MEMORANDUM AND ORDER SUSTAINING (IN PART) OBJECTION
TO CONFIRMATION FILED BY MANUAL MOUTINHO, MARK IV
CONSTRUCTION COMPANY, INC. AND MANUAL MOUTINHO,
TRUSTEE FOR THE MARK IV CONSTRUCTION COMPANY 401k SAVINGS PLAN[1]**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

**WHEREAS,** before the court are (a) confirmation of the above-referenced debtor and debtor-

in-possession's (the "Debtor') Seventh Amended Plan of Reorganization (ECF No. 644, the "Plan")

and (b) Manuel Moutinho, Mark IV Construction Company, Inc. and Manuel Moutinho, Trustee for

the Mark IV Construction Company 401k Savings Plan collective Notice of Continuing Objection

---

[1] This Brief Memorandum and Order is issued in lieu of the Bench Ruling previously scheduled for February 8, 2012.

to Confirmation of the Debtor's Seventh Amended Plan (ECF No. 664, the "Objection"). This memorandum disposes of the Objection only with respect to Manuel Moutinho's (in his trustee's capacity, the "Secured Creditor") objection with respect to treatment under the Plan of his secured claim (after election pursuant to 11 U.S.C. § 1111(b)(2) (see below), the "Secured Claim") with respect to 375 Connors Lane, Stratford, Connecticut (the "Property"). (*See* ECF No. 644 at 4 (definition of Class 14A), 11-12 (treatment of Class 14A as an impaired class of secured claim), collectively, the "Plan Treatment.");

## Jurisdiction and Procedure

**WHEREAS,** this court has jurisdiction over this matter as a core proceeding under 28 U.S.C. §§ 1334 and 157 and that certain Order dated September 21, 1984 of the District Court for this District (Daly, C.J.).[2] This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (made applicable here by Rule 9014 of the Federal Rules of Bankruptcy Procedure);

**WHEREAS,** the Objection last came on for a hearing on December 21, 2011 with a subsequent on-the-record status conference convened on January 4, 2012. (*See* ECF No. 697.) At the December 21, 2011 hearing, the Debtor and the Secured Creditor were directed to submit simultaneous briefs with respect to the propriety of the Plan Treatment on or before January 25, 2012. Those briefs have been filed (*see* ECF Nos. 708, 710) and the matter now is ripe for the adjudication set forth below;

---

[2]   That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . ."

**Background**

**WHEREAS,** it is undisputed that, at all times relevant hereto, the Secured Creditor held and holds a mortgage (the "Mortgage") on the Property.  It also is undisputed that, prior to the filing of this case, the debt secured by the Mortgage was "non-recourse" as to the Debtor.  The Secured Creditor alleges that, although the debt secured by the mortgage was "non-recourse" as to the Debtor, one or more non-debtor (*i.e,* third) parties (and/or their property, collectively, "Third Parties") were and are liable on that debt. It is undisputed that the amount of the Mortgage exceeds the value of the Property (*i.e.,* a collateral "deficiency" exists);

**WHEREAS,** the Debtor commenced this case by a petition filed on October 14, 2010.  As a result of that filing, 11 U.S.C. § 1111(b)(1)[3] provided the Secured Creditor with the option of

---

[3]  Section 1111(b) provides as follows:

  (b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless

  (i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

  (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

 (B) A class of claims may not elect application of paragraph (2) of this subsection if–

  (i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

  (ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.

having its deficiency treated as an unsecured claim (*i.e.,* treated as if the Secured Creditor had "recourse" against the Debtor). However, the Secured Creditor exercised an election under Section 1111(b)(2) to forego the recourse offered under Section 1111(b)(1) in favor of having its *entire* allowed claim treated as an allowed secured claim. *Compare* 11 U.S.C.A. § 1111(b)(2) (West 2012) ("claim is a secured claim to the extent that such claim is allowed") *with* 11 U.S.C.A. § 506(a) (West 2012) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . .");

**WHEREAS,** the Plan proposes to treat the Secured Claim in relevant part as follows: "If this class claims to be partially unsecured in an amount greater than $50,000 and this class claims to be fully secured and makes election under § 1111(b), the property will be surrendered *in full satisfaction and extinguishment of any debt, both unsecured and secured pursuant to mortgage dated March 29, 2006 in the principal amount of $690,000.*"[4] (ECF No. 644 at 12 (with respect to Claim 14A) (*i.e.,* the Plan Treatment).);

**WHEREAS,** the Secured Creditor has not accepted the Plan (although, allegedly, some other classes have voted to accept the Plan) and objects to the Plan Treatment. Accordingly, (if otherwise confirmable) the Plan can be confirmed without the Secured Creditor's acceptance only if the

---

    (2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

11 U.S.C.A. § 1111(b) (West 2012).

    [4] The italicized portion of the foregoing hereafter is referred to as the "Disputed Language."

applicable requirements of 11 U.S.C.§ 1129(b) are met as to the Secured Creditor's claim (*i.e.,* a "cramdown" of the Plan over the objection of the Secured Creditor). *See id.*;[5]

---

[5] It is undisputed that the Plan Treatment "impair[s]" the Secured Claim. Section 1129(b) provides as follows:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
>   (A) With respect to a class of secured claims, the plan provides–
>
>     (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
>     (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
>     (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
>     (iii) for the realization by such holders of the indubitable equivalent of such claims.
>
>   (B) With respect to a class of unsecured claims–
>
>     (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

**WHEREAS,** pursuant to Section 1129(b)(1) a plan confirmed over a class' objection must be (among other things) "fair and equitable" with respect to that class. *See* 11 U.S.C. § 1129(b)(1). Assuming that the Plan is otherwise confirmable, the Debtor argues that the Plan Treatment is "fair and equitable" to the Secured Creditor's class within the purview of Section 1129(b)(1) because the Plan Treatment provides the Secured Creditor with the "indubitable equivalent" of the Secured Claim. (*See* 11 U.S.C. § 1129(b)(2)(A)(iii).);

### Analysis

**WHEREAS,** the Secured Creditor's supporting memorandum of law (ECF No. 708) argues in general terms that the Plan Treatment does not satisfy the requirements of Section 1129(b)(1), but does not specifically address the Debtor's "indubitable equivalent" argument. The Debtor relies upon Section 1129(b)(2)(A)(iii)'s "indubitable equivalent" standard to satisfy the statutory "fair and equitable" requirement. However, this court cannot confirm the Plan if Section 1129(b) applies and,

---

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests–

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C.A. § 1129(b) (West 2012).

as a matter of law, the "fair and equitable" requirement of Section 1129(b)(1) has not been met. *Cf. United Student Aid Funds, Inc. v. Espinosa,* 130 S.Ct. 1367 (2010) (finding that plan unconfirmable as a matter of law may not be confirmed even absent objection). For the reasons set forth below, the court concludes that, as a matter of law, the Plan Treatment does not provide the Secured Creditor with the "indubitable equivalent" of the Secured Claim and (as a result) the "fair and equitable" requirement has not been met with respect to the Secured Claim. Accordingly, the Objection must be sustained on those grounds;

**WHEREAS,** a majority of courts agree that "abandonment [of the collateral usually followed by foreclosure], or other *unqualified transfer* of the collateral, to the secured creditor" satisfies the "indubitable equivalent" standard. *See, e.g., In re Clarendon Holdings, LLC,* No. 11-02479-8-SWH, 2011 WL 5909512, at *2 (Bankr. E.D.N.C. Oct. 19, 2011) (citation and internal quotation marks omitted; emphasis added). *See also* Jack Friedman, *What Courts Do To Secured Creditors in Chapter 11 Cramdown,* 14 Cardozo L. Rev. 1495, 1537-39 (1993) (setting forth majority position and also the minority position that a collateral transfer *never* satisfies the "indubitable equivalent" standard and that only an unconditional abandonment satisfies the "indubitable equivalent" standard in this context). The Debtor urges the majority view. (*See* ECF No. 710 at 4.) The Secured Creditor takes no position. Accordingly, the court holds, for the purposes of this opinion only, that a transfer of collateral to a secured creditor" *can* meet the "indubitable equivalent" standard, but only if the transfer is "unqualified;"

**WHEREAS,** on its face Section 1129(b) speaks only in terms of "claims" and "interests." *See* 11 U.S.C. § 1129(b). It does not speak in terms of "debts." *See id.* The term "claim" is defined in 11 U.S.C. § 101(5) as follows:

- 7 -

> The term "claim" means–
>
>   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
>   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C.A. § 101(5) (West 2012). "The term 'debt' means liability on a claim." 11 U.S.C.A. § 101(12) (West 2012);

**WHEREAS,**

> [t]he Code's definition [of 'debt' in terms of 'claim'] reveals Congress' intent that the meanings of 'debt' and 'claim' be coextensive. That interpretation is confirmed by legislative history stating that the terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor.'

*Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir. 1997) (alteration in original; citations and internal quotation marks omitted). This court agrees (as it must). However, to say that the terms "claim" and "debt" are "coextensive" means that the two concepts are closely related. It does not mean that the two concepts receive the same treatment under the Bankruptcy Code. In fact, "claims" and "debts" do not receive the same treatment under the Bankruptcy Code. Under the Bankruptcy Code, "claims" are subject to the Bankruptcy Code's allowance/distribution procedures. *See, e.g.,* 11 U.S.C. §§ 502, 1129(b) (absolute priority rule). *But cf.* 11 U.S.C. § 1141(c) (discussed below). On the other hand, "debts" are subject to the Bankruptcy Code's discharge/dischargeability procedures (and sometimes to injunction pursuant to 11 U.S.C. § 105). *See, e.g.,* 11 U.S.C.A. § 1141(d)(1) ("[C]onfirmation of a plan . . . discharges the debtor from any debt . . . .");

**WHEREAS,** Section 1129(b)(2)(A) speaks in terms of "claims," not "debts" and is not ambiguous in any relevant sense. It must be presumed that Congress intended the consequences of its choice of language. *See Duncan v. Walker,* 533 U.S. 167, 173 (2001) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."(citation and internal quotation marks omitted)). In fact, Congress knew how to use both terms (*i.e.*, "claims" and "debts") in one section of the Bankruptcy Code when it wanted to. *Compare* 11 U.S.C. § 1141(c) (use of "claim") *with* 11 U.S.C. § 1141(d) (use of "debt"). *See also* 8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ § 1141.04[1], at 1141-16 (16 ed. rev. 2010) ("Section 1141(c) may also be read as effecting an *in rem* discharge of property of the estate that parallels the debtor's *in personam* discharge under section 1141(d).");

**WHEREAS,** on its face Section 1129(b)(2)(A) states what can be "done" to an unconsenting class of secured claims in a chapter 11 "cramdown;" it does not permit the debtor to "do" anything to the corresponding debt. That is left to operation of law pursuant to Section 1141. *See* 11 U.S.C. § 1141 ("Effect of confirmation"). Accordingly, in the "indubitable equivalent"/collateral transfer context a debtor cannot "do" anything to the corresponding debt in a cramdown context other than (perhaps) to provide for a credit against the debt equal to the value of the surrendered collateral. *See Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Development Corp.),* 881 F.2d 1346, 1349 (5th Cir. 1989) (approving collateral transfer provision providing "for a credit on the indebtedness to the extent of the value of [the surrendered collateral]");

**WHEREAS,** the Disputed Language proposes to convey the Property to the Secured Creditor provided further that such conveyance is "in full satisfaction and extinguishment of *any debt*"

pursuant to the Mortgage (emphasis added). As explained above, that provision is inconsistent with Section 1129(b)(2)(A) which deals only with "claims." Accordingly, the "full satisfaction and extinguishment" provision of the Plan Treatment imposes an impermissible "qualifi[cation]" on the proposed collateral transfer. That qualification prevents the Plan Treatment from meeting the "indubitable equivalent" standard. Therefore, the "fair and equitable" requirement of Section 1129(b)(2) has not been met;

### Conclusion

**NOW, THEREFORE,** the Objection is sustained to the extent and for the reasons set forth above, without prejudice to the Debtor's right further to amend the Plan in a manner consistent with this opinion.[6]

It is **SO ORDERED.**

Dated: February 7, 2012                               BY THE COURT

Lorraine Murphy Weil
Chief United States Bankruptcy Judge

---

[6] In light of the foregoing disposition, it is unnecessary for the court to consider issues relating to the effect of the Disputed Language upon any rights the Secured Creditor may have against Third Parties.